UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Martha Luna</u>

    v.

<u>Atrium Medical Corporation,
Maquet Cardiovascular US
Sales, LLC, and Getinge AB</u>

Civil No. 16-cv-372-LM
Opinion No. 2019 DNH 135

<u>In re: Atrium Medical Corp.
C-QUR Mesh Products Liability
Litigation (MDL No. 2753)</u>

O R D E R

    Martha Luna brings suit against Atrium Medical Corporation ("Atrium"), a medical device company that manufactured and sold C-QUR mesh, and two related companies, Maquet Cardiovascular US Sales, LLC ("Maquet") and Getinge AB ("Getinge"), alleging product liability claims, breach of warranties claims, and violation of consumer protection laws. Luna's suit is part of a multi-district litigation ("MDL") proceeding involving claims that C-QUR mesh was, among other things, defective and unreasonably dangerous and caused injury when surgically implanted for hernia repair. This case was selected in the MDL proceeding for the Initial Discovery Pool, making it a bellwether case. Defendants Atrium and Maquet move to dismiss on a variety of grounds.[1] Luna objects.

---

[1] Getinge has filed a separate motion to dismiss in the main MDL case contending that the court lacks personal jurisdiction over it. That motion remains pending. Getinge does not join in the instant motion.

## STANDARD OF REVIEW

Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## BACKGROUND

On August 9, 2013, Luna, a California resident, underwent a repair procedure for an umbilical hernia in a California hospital. A C-QUR Mesh V-Patch was used for the repair. Within two weeks, Luna experienced significant symptoms including drainage from the wound and fever. She was treated with antibiotics, and by September 23, 2013, her wound had healed. In October 2015, however, Luna was admitted to the hospital because of fever and abdominal pain. A CT scan identified an abdominal abscess. She then had surgery to drain the abscess and remove the mesh. She recovered from that procedure.

Atrium, which designed, marketed, and sold the C-QUR mesh that was implanted into Luna, is located in New Hampshire. Maquet is located in New Jersey, and Getinge is a Swedish corporation. Luna alleges that Maquet and Getinge are responsible for Atrium's actions and exercised control over Atrium with respect to oversight and compliance with applicable safety standards.

Luna alleges, among other things, that defendants designed, manufactured, marketed, and sold C-QUR mesh to be used by surgeons for hernia repair. C-QUR mesh was intended to be permanently implanted for those repairs, and defendants represented that C-QUR mesh was safe and effective for that purpose. Luna further alleges that C-QUR mesh was not safe or effective for its intended purpose, that defendants failed to adequately research and test it to determine the risks and benefits of the mesh, and that they failed to warn of risks although they had been notified that the mesh was causing widespread catastrophic complications. Luna brings claims for negligence (Count I), strict liability – design defect (Count II), strict liability – manufacturing defect (Count III), strict liability – failure to warn (Count IV), breach of express warranty (Count V), breach of implied warranties of merchantability and fitness of purpose (Count VI), and violation of consumer protection laws (Count VII). She seeks compensatory and enhanced damages.

**DISCUSSION**

Defendants Atrium and Maquet contend that California law governs the liability portion of Luna's claims and that her claims fail under the applicable law. Luna objects, arguing that it is too early for the court to engage in a choice-of-law analysis, but that if it did employ that analysis, New Hampshire law should apply to all of her claims.

I.  Choice of Law

Defendants contend that California has an interest in the case because Luna is a resident of the state and her alleged injury occurred there. They further contend that a choice-of-law analysis is necessary because California's product liability law conflicts with New Hampshire's

product liability law and that, under New Hampshire's choice-of-law principles, California law governs. Luna argues that a choice-of-law analysis is premature because additional factual development is necessary and that, other than as to her strict liability – design defect claim, defendants have not sufficiently identified an actual conflict. She further contends that if the court engages in a choice-of-law analysis, New Hampshire law governs.

### A. Timing of Choice-of Law

Luna includes a section in her objection that is titled "Ripeness of Choice of Law Determination." Doc. no. 182 at 3. She notes that "[t]here is no rule allowing nor prohibiting choice of law determinations at the motion to dismiss stage." Id. Luna goes on to discuss cases that address whether the record was sufficiently developed to allow a choice-of-law determination at an early stage of the litigation. She asserts that "case-specific depositions have not yet taken place and very little case-specific written discovery has taken place." Id. at 6.

Although the parties have not engaged in intensive fact discovery, Luna does not explain what specific information is lacking that is necessary for the choice-of-law analysis that can be obtained only through discovery. The location of where defendants manufactured the allegedly defective products and where Luna had her surgery is not in dispute. Therefore, Luna has not shown that the choice-of-law determination is premature, and the court employs the analysis.

### B. Standard

The parties agree that New Hampshire choice-of-law principles govern the choice of law in this bellwether case. See, e.g., Lexington Ins. Co. v. Gen. Acc. Ins. Co. of Am., 338 F.3d 42, 46 (1st Cir. 2003) (noting that in "determining what state law is relevant, a federal court must

4

apply the choice-of-law framework of the forum state"). "Under New Hampshire choice-of-law principles, when more than one state may have an interest in the suit and the choice involves substantive law, the court must first decide whether relevant New Hampshire law actually conflicts with the laws of the other interested states." SIG Arms Inc. v. Emp'rs Ins. of Wausau, 122 F. Supp. 2d 255, 258–59 (D.N.H. 2000). An actual conflict exists only when application of the laws of an interested state other than the forum would change the outcome. Lambert v. Kysar, 983 F.2d 1110, 1114 (1st Cir. 1993). When no actual conflict is shown, the court will apply the law of the forum state which, in this case, is New Hampshire. Aftokinito Props, Inc. v. Millbrook Ventures, LLC, No. 09-cv-415-JD, 2010 WL 3168295, at *3 (D.N.H. Aug. 9, 2010). The party who asserts that the law of another state is different from the law of the forum state bears the burden of proving the content of the foreign law. SIG Arms, 122 F. Supp. 2d at 259.

### C. Actual Conflict

New Hampshire and California are interested states in this case. Defendants, who bear the burden to show that California law actually conflicts with New Hampshire law, assert that unlike New Hampshire, California does not recognize a claim for strict product liability based on a design defect for medical implants, such as the C-QUR mesh at issue in this case. Defendants contend that because Luna cannot pursue that theory of relief under California law but can under New Hampshire law, an actual conflict exists.

Luna agrees that an actual conflict exists as to her strict product liability claim based on a design defect in Count II. She contends, however, that defendants fail to identify any other actual conflict between New Hampshire and California law with regard to her remaining claims.

5

Luna notes that in the absence of such a showing with respect to each claim, as required by the doctrine of dépeçage, New Hampshire law applies.

In their reply, defendants argue that the court should not apply the doctrine of dépeçage here because the "issues before the court are inextricably intertwined . . . given the common nucleus of facts that form the basis of" Luna's claims. Doc. no. 185 at 3. They also contend that, regardless, California law actually conflicts with New Hampshire law with regard to Luna's remaining claims. Specifically, they assert that under California law, a plaintiff must plead and prove that a feasible alternative design exists in order to maintain a negligent design defect claim while New Hampshire does not recognize that rule.

The court agrees with Luna that dépeçage requires the court in the context of this case to consider the choice-of-law question as to each claim. First, defendants' argument that a court should not apply dépeçage when the claims are "inextricably intertwined" is based on a case from the Eastern District of Wisconsin. See Stupak v. Hoffman-La Roche, Inc., 287 F. Supp. 2d 968, 971-72 (E.D. Wis. 2003) (citing Boomsma v. Star Transp., Inc., 202 F. Supp. 2d 869, 878 (E.D. Wis. 2002)). A recent case in that district suggests that the "inextricably intertwined" principle may not be a correct statement of the law. See PCM Salles Inv. Vantage Point Corp., No. 18-CV-1230-JPS, 2019 WL 3070078, at *5 n.1 (E.D. Wis. July 12, 2019) (noting that the "inextricably intertwined" theory came from no "source of law, but rather from a party's brief" and that "[n]o Wisconsin appellate courts, or the Seventh Circuit for that matter, have endorsed the 'inextricably intertwined' phrase").

Even if the court were inclined to follow defendants' questionable theory, they have not shown that the issues presented in Luna's product liability claims, breach of warranties claims, and violation of consumer protection laws claim are inextricably intertwined. Indeed, the issues

6

are different because, as defendants note in their briefs, the legal standards for the claims require different elements of proof. Therefore, dépeçage requires the court to consider the choice-of-law question separately for each claim.

Other than as to Luna's claim for strict liability – design defect in Count II, defendants have not shown that differences in New Hampshire and California law would change the outcome of the claims in this case. Although they show differences exist between New Hampshire and California law as to a claim for negligence in these circumstances, they fail to show that Luna could not allege facts that would satisfy the standard imposed by California law. Because defendants have not carried their burden as to Luna's claims other than her claim for strict liability – design defect in Count II, the court will apply New Hampshire law to the liability portion of Luna's other claims. See Aftokinito, 2010 WL 3168295, at *3. Because defendants have carried their burden to show an actual conflict between New Hampshire and California law with respect to Count II, the court employs a choice-of-law analysis as to that claim.

D. Choice of Law for Count II

New Hampshire uses a five-factor test for choice of law: "(1) predictability of results; (2) maintenance of reasonable orderliness and good relationship among the states in our federal system; (3) simplification of the judicial task; (4) advancement by the court of its own state's governmental interests rather than those of other states; and (5) the court's preference for what it regards as the sounder rule of law." Matter of Geraghty, 169 N.H. 404, 409, 150 A.3d 386, 391 (2016). "The relative importance of each factor varies depending on the type of case." Lacaillade v. Loignon Champ-Carr, Inc., No. 10-cv-68-JD, 2011 WL 4738654, at *2 (D.N.H. Oct. 7, 2011).

The first three factors have little or no relevance in this case. The first factor—predictability of results—"is usually implicated only in suits involving contractual or similar consensual transactions and emphasizes the importance of applying to the parties' bargain or other dealings the law on which they agreed to rely at the outset." Stonyfield Farm, Inc. v. Agro-Farma, Inc., No. 08-cv-488-JL, 2009 WL 3255218, at *7 (D.N.H. Oct. 7, 2009) (internal quotation marks and citations omitted). Thus, the first factor has no weight here.

The second factor—maintenance of reasonable orderliness and good relationship among the states in our federal system—requires only that the court avoid applying the law of a state "which does not have substantial connection with the total facts and with the particular issue being litigated." Lessard v. Clarke, 143 N.H. 555, 557 (1999) (internal quotation marks and citation omitted). Both California and New Hampshire have substantial connections with the facts in this case. Luna resides and her surgeries occurred in California, and Atrium is located in New Hampshire and manufactures and sells its C-QUR mesh products here. Thus, the second factor has little relevance.

With respect to the third factor—simplification of the judicial task—the court is of course more accustomed to New Hampshire law but could also apply California law with little difficulty. See Lacaillade, 2011 WL 4738654, at *3 ("Although it may be easier for a court to apply the forum state's substantive law, it certainly cannot be argued that Maine's law regarding the relevant issue is so complex as to outweigh other competing considerations."). Therefore, none of the first three factors tips the balance on the choice-of-law analysis in this case.

The fourth factor considers the advancement of the forum state's governmental interests. This factor "becomes important only when New Hampshire has a particularly strong policy in reference to local rules of law, which the other state[']s laws under consideration would fail to

achieve." Stonyfield Farm, 2009 WL 3255218, at *8 (internal quotation marks, citation, and alterations omitted). "Otherwise, New Hampshire's interest is limited to the fair and efficient administration of justice." Id. (internal quotation marks and citations omitted). Here, as in many other cases, this factor is of limited importance. To the extent it carries any weight, however, it favors the application of New Hampshire law. New Hampshire has an interest in the liability of a New Hampshire company for injuries caused by its products. See, e.g., Lacaillade, 2011 WL 4738654, at *3 n.4 (noting that New Hampshire has an interest in regulating the liability of its corporations); see also Turcotte v. Ford Motor Co., 494 F.2d 173, 178 (1st Cir. 1974). Therefore, the fourth factor has little relevance but, to the extent it carries any weight, it favors the application of New Hampshire law.

The fifth factor—the sounder rule of law—"allows the court, where everything else is equal, to choose to apply [a] state's rule that it regards as wiser, sounder, and better calculated to serve the total ends of justice, especially where one state's rule lies in the backwater of the modern stream." TIG Ins., 2015 WL 5714686, at *6 (internal quotation marks and citation omitted). "As such, [this factor] tends to play a tie-breaker role in close cases." Id. (internal quotation marks and citation omitted).

The sounder rule of law depends on the policies behind the conflicting laws and the court's view of "the socio-economic facts of life at the time when the court speaks." Geraghty, 169 N.H. at 412. This factor applies "even when the injury occurs out of State." LaBounty v. Am. Ins. Co., 122 N.H. 738, 743 (1982).

Defendants gloss over the fifth factor in their memorandum in support of their motion to dismiss and in their reply brief, making no argument as to which law is sounder. Instead, defendants' choice-of-law analysis focuses on California's relationship to the surgeries and sale

9

of their mesh product and argue that because the relationship with California is significant, California law governs. In support, defendants cite a case from the District of Massachusetts, applying Massachusetts choice-of-law principles, which follows the Restatement (Second) Conflict of Laws § 146 for choice of law as to tort claims. See Longtin v. Organon USA, Inc., 363 F. Supp. 3d 186, 191-92 (D. Mass. 2018). While the "significant relationship" test is used in some states, it is not used in New Hampshire.[2] TIG Ins., 2015 WL 5714686, at *4; Geraghty, 169 N.H. at 409. Defendants make no argument that California provides the sounder rules of law as to product liability, breach of warranty, and consumer protection.

In contrast to the restrictions on a plaintiff's right to recover for product liability under California law, New Hampshire has chosen to put the risk of liability for injury caused by products, without excluding medical devices, on product manufacturers and sellers:

> The reasons for the evolution of the law in the area of products liability are many. We live in an era of national advertising and of nationwide distribution which can add or remove a product from our store shelves in a matter of days. Many of those nationally sold products contain chemical compounds and synthetics the side effects of which clearly cannot be anticipated. It is believed that if today's products are capable of causing illness or physical injury, the risk of liability is best borne by the companies that profited from their sale, rather than by the unfortunate individual consumers.

Heath v. Sears, Roebuck & Co., 123 N.H. 512, 521 (1983); see also Royer v. Catholic Med. Ctr., 144 N.H. 330, 334-35 (1999) (holding that a hospital that provides a prosthetic knee to be

---

[2] Defendants rely on a case from the District of Illinois to show that New Hampshire's choice-of-law framework and the significant relationship test are "substantially similar." In re Fluidmaster, Inc., Water Connector Components Prod. Liab. Litig., No. 14-CV-5696, 2017 WL 1196990, at *33 (N.D. Ill. Mar. 31, 2017). As the court in Fluidmaster notes, however, many New Hampshire courts apply the five-factor test or consider the "significant relationship" test only as to contract claims. Id. (citing Glowski v. Allstate Ins. Co., 134 N.H. 196, 198 (1991), Aftokinito, 2010 WL 3168295, at *3, and Smith v. Morbark Indus., Inc., 733 F. Supp. 484, 487 (D.N.H. 1990)). To the extent defendants urge a choice-of-law analysis other than New Hampshire's five-factor test, the court finds their arguments unpersuasive.

implanted during surgery at the hospital is not in the business of selling prosthetic knees unlike the manufacturer of the product); Parenteau v. Johnson & Johnson Orthopedics, Inc., 856 F. Supp. 61, 64 (D.N.H. 1994) (holding that federal law did not preempt state law strict liability claim for defective prosthesis); see also Connelly v. Hyundai Motor Co., 351 F.3d 535, 539 (1st Cir. 2003) ("The New Hampshire Supreme Court has consistently declined to adopt the rule urged by Hyundai—that a trial court may not instruct a jury on both strict liability and negligence counts in a product liability action."); State v. Exxon Mobil Corp., 168 N.H. 211, 247-50 (2015) (discussing the development of New Hampshire's product liability law and the efforts to avoid the "practically impossible burden" that many plaintiffs face in such cases).

In the absence of any showing by defendants that California provides the sounder rule of law, the fifth factor weighs in favor of New Hampshire law and tips the balance in that direction. The court will therefore apply New Hampshire law to the liability portion of all claims in this case.

II. Merits of the Claims

Defendants move to dismiss all of Luna's claims, arguing that she fails to state claims under California law. Because New Hampshire law governs Luna's claims, defendants' motion to dismiss does not address the applicable law and their arguments are without merit.[3]

---

[3] In their reply, defendants make a cursory reference to Kelleher v. Marvin Lumber & Cedar Co., 152 N.H. 813, 827-28 (2005), as authority for a requirement that a breach of warranty claim only arises from an explicit warranty and therefore that Luna's breach of warranties claims should be dismissed under either New Hampshire or California law. Particularly in light of defendants' failure to seek dismissal of Luna's breach of warranties claims under New Hampshire law in their motion to dismiss, this argument is insufficient to challenge the warranty claims under New Hampshire law. See, e.g., Andersen v. Dartmouth Hitchcock Med. Ctr., No. 13-cv-477-JD, 2015 WL 847447, at *5 (D.N.H. Feb. 26, 2015) ("A party generally cannot raise or develop arguments for the first time in a reply.").

11

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss (doc. no. 178) is denied.

SO ORDERED.

_____
Landya B. McCafferty
United States District Judge

August 26, 2019

cc: Counsel of Record